# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:** | |
| **Lorne B. Dickerson and** **Crystal L. Dickerson,** | **Bankruptcy Case** **No. 11-02153-JDP** |
| **Debtors.** | |

## MEMORANDUM OF DECISION

**Appearances:**

Howard R. Foley, Foley Freeman, PLLC, Meridian, Idaho, Attorney for the Debtors

Jordan S. Ipsen, Mark L. Clark, PLLC, Nampa, Idaho, Attorney for Collection Bureau, Inc.

### *Introduction*

On February 4, 2014, chapter 7[1] debtors Lorne and Crystal Dickerson

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

("Debtors") filed a Motion for Contempt (the "Motion") alleging that

creditor Collection Bureau, Inc. ("Collection") had violated the § 362(a)

automatic stay and the § 524(a) discharge injunction in their bankruptcy

case.  Dkt. No. 32.  Collection filed an objection to the Motion on February

18, 2014, generally denying that it should be found to be in contempt.  Dkt.

No. 37.

On March 4, 2014, the Court conducted an evidentiary hearing

concerning the Motion at which the parties appeared, presented evidence

and testimony, and argued their respective positions.  Dkt. No. 49.  At the

conclusion of the hearing, the Court took the issues under advisement.

The Court has considered the evidence, testimony, and arguments

of the parties.  This Memorandum of Decision constitutes the Court's

findings of fact and conclusions of law,[2] and disposes of the Motion.

### *Facts*

Prior to Debtors' bankruptcy filing, several creditors assigned their

claims against Debtors to Collection.  *See* Collection's State Court

---

[2] Rules 9014; 7052.

MEMORANDUM OF DECISION – 2

Complaint, Exh. 104.  After purportedly making a demand on Debtors to

pay the amounts it claimed were due, Collection filed a complaint against

Debtors in Idaho's Fourth District Court on October 14, 2010, (the

"Complaint"), seeking a money judgment for each of the assigned debts.

*Id.* at 1.  The Complaint contained six counts:  Count 1 - for $32.79 plus

interest, alleged to be owed to Saltzer Medical; Count 2 - for $661.87 plus

interest, alleged to be owed to Anytime Fitness; Count 3 - for $3,111.19

plus interest, alleged to be owed to St. Luke's Woman's Clinic; Count 4 -

for $54.45 alleged to be owed to Canyon County (the "County") for case

number 6549-N; Count 5 - for $71.10 alleged to be owed to the County for

case number 6549-N; and Count 6 - for $166.60 alleged to be owed to the

County for case number 7554-C.  *Id.*

The amounts sought by Collection, as the assignee of the County,

were purportedly for fines associated with criminal charges against Mr.

Dickerson.  Notwithstanding the amounts alleged by Collection in the

Complaint to be owed by Mr. Dickerson for fines (*i.e.*, Counts 4 - 6), based

upon the documentary evidence admitted at the hearing, *see* Exhs. 101 and

MEMORANDUM OF DECISION – 3

102, and the testimony of Anna Hernandez, a Court Financing Supervisor

for the County, all of these fines appear to have been paid by Debtors

directly to the County before Collection filed the Complaint, except for

$150.00.  However, that amount was paid by Debtors directly to the

County on May 4, 2012.

Debtors did not respond to the Complaint, and on June 21, 2011,

Collection obtained a default judgment against Debtors for eight different

debts, not six, in the total amount of $8,635.61.  *See* Exhs. 106 and 107.[3]

Shortly after the default judgment was entered, on July 8, 2011, Collection

caused a writ of garnishment to be issued by the clerk, which directed the

Ada County Sheriff (the "Sheriff") to garnish Mr. Dickerson's wages.  Exh.

108.

In response to the garnishment, on July 14, 2011, Debtors filed their

chapter 7 petition.  Dkt. No. 1.  They listed Collection as a creditor in their

---

[3] No explanation has been provided to the Court by Collection concerning
why two extra debts were added to the six debts described in the Complaint
when Collection sought entry of the default judgment against Debtors.  To the
Court, this irregularity evidences that Collection's calculations concerning the
amounts Debtors allegedly owed on the assigned debts are unreliable.

MEMORANDUM OF DECISION – 4

schedules, Exh. 109, and Collection was sent a notice informing it of the

bankruptcy filing by the Bankruptcy Noticing Center.  Dkt. No. 12.

Without opposition from Collection, Debtors received a discharge on

October 17, 2011.  Dkt. No. 26.  Notice of the entry of the discharge was

also sent to Collection.  Dkt. No. 28.  The bankruptcy case was closed on

October 19, 2011.  Dkt. No. 27.

When Debtors' bankruptcy case was filed, the Sheriff released the

outstanding writ of garnishment on August 10, 2011.  Exh. 110.  It appears

no other action was taken by Collection against Debtors during the

pendency of the bankruptcy case.

However, on November 2, 2011, after Debtors' discharge was

entered and the bankruptcy case was closed, Collection obtained a second

writ of garnishment from the state court to collect a "Balance Now Due"

on the default judgment of "$8,849.98."  Exh. 111.  The Sheriff served this

writ of execution on Mr. Dickerson's employer on November 17, 2011, but

later received instructions from Collection on November 21, 2011, "to

withhold further action . . . due to bankruptcy."  Exhs. 112 and 113.  On

MEMORANDUM OF DECISION – 5

that same date, Debtors' bankruptcy counsel sent a faxed a copy of the

discharge order to the Sheriff, to counsel for Collection, Mark L. Clark,

PLLC ("Clark PLLC"), and to Mr. Dickerson's employer, requesting that

they all "please cease the garnishment ordered . . . for debts [d]ischarged

in [Debtors'] bankruptcy . . . ."  Exh. 114.

Undeterred, on December 2, 2011, Collection obtained yet another

writ of garnishment, this time in the reduced amount of $656.81 reflecting

what it characterized as an "amount credited [of] $8,193.17" against the

judgment debt.[4]  The Sheriff served this writ on Mr. Dickerson's employer,

Exh. 116, and on December 23, 2011, Debtors' bankruptcy counsel sent

another letter to Clark PLLC warning that this second attempt to collect

the judgment debt was "a violation of [Debtors'] rights under 11 U.S.C.

§ 727(b)."  Exh. 117.  Along with this letter, Debtors' counsel included

---

[4] Of course, Debtors had not paid any amounts on the default judgment debt to Collections.  Through this "credit," Collection apparently acknowledges that most, but not all, of the debts included in the judgment were discharged in Debtors' bankruptcy.  The Court is at a total loss as to how Collection computed the amounts alleged to be due on the judgment in this, and the subsequent garnishment writs discussed below.  As a result, the Court declines to assign any credibility to Collection's calculations.

MEMORANDUM OF DECISION – 6

copies of Debtors' bankruptcy petition and the discharge order. *Id.* On January 5, 2012, Clark PLLC responded to the letter, and for the first time advised Debtors' counsel that, in counsel's opinion, "[t]he amount that [Collection] is pursuing through garnishment of your client's wages is for Canyon County fines. As you know, these fines are not dischargeable through bankruptcy." Exh. 119.

The record does not reflect that Debtors answered, or took any action, in response to Collection's letter. On April 17, 2012, Collection obtained another writ of garnishment, this one for $734.55, that was again served on Mr. Dickerson's employer. Exh. 121. However, on May 9, 2012, the Sheriff received notice from Collection's attorneys to withhold further action on this writ. Exh. 126.

After this garnishment attempt, on May 9, 2012, Debtors' attorneys sent Clark PLLC a letter which conceded that, under § 523(a)(7), any "fines" Mr. Dickerson might owe to the County were not discharged in

MEMORANDUM OF DECISION – 7

Debtors' bankruptcy.[5]  However, in the letter, Debtors' counsel advised

Collection's lawyers that Mr. Dickerson had paid any fines due to the

County for case number 7554-C (*i.e.,* Count 6 of the Complaint) on May 4,

2012, with a cash payment of $150.  Exh. 125.  The letter insisted that any

additional interest and costs that had been added to the fine amounts,

which Collection was apparently trying to recover via the garnishments,

were discharged in the bankruptcy case.  Finally, the letter asked

Collection to provide an accounting to Debtors of how it had calculated

the undischarged amounts remaining due on the judgment.  Exh. 122.

There is nothing in the record to show that Collection responded to

the letter requesting an accounting or to Debtors' attorney's contention

that the additional amounts for fees and costs had been discharged in

Debtors' bankruptcy, for over a year.  Then, on July 26, 2013, a Clark PLLC

attorney sent an email to Debtors' counsel stating that the firm had "asked

outside bankruptcy counsel for authority supporting our position that we

---

[5]  As noted above, based upon the evidence presented to the Court, it
appears that, by this time, Debtors had paid all outstanding fines to the County.

MEMORANDUM OF DECISION – 8

are entitled to recover attorney fees and court costs attached to a non-

dischargeable debt," and that Clark PLLC expected to have that authority

in hand within a week. Exh. 135. No proof was offered that Clark PLLC

ever provided any "authority" for its position to Debtors. Even later, on

September 9, 2013, the same attorney for Clark PLLC calculated the

amounts Debtors allegedly owed on account of the fine interests and

collection fees. Exh. 136. The attorney asserted that, at that time, the

amounts due were "Interest: 81.91[,] Other Charges: 16.60 (Statutory 1/3

fee)[,] Court Costs: 449.50[,] Attorney Fees: 200.00[,] Total Due: $748.01."

*Id.* While the Court has endeavored to understand them, it can not

understand how these numbers were calculated.

In the meantime, on July 1, 2013, Collection had obtained another

writ of garnishment, now for $683.75, which was served on Mr.

Dickerson's employer. Exh. 128. This writ was released by the Sheriff

after receiving written notice from Collection to withhold further action.

Exh. 131. A total of $490.58 was withheld from Mr. Dickerson's wages for

the garnishments in July, but all of these sums were eventually returned

MEMORANDUM OF DECISION – 9

by the Sheriff to Debtors when the writ was released by Collection.  Exhs.

133-34.

Though the garnished funds were refunded to Debtors, Ms.

Dickerson testified that Collection's garnishment seriously impaired

Debtors' ability to pay their rent on time, which caused late fees to accrue,

although Debtors did not provide proof of the amount of those late fees.

In addition, Ms. Dickerson testified about her attempts to rectify what she

viewed as the inappropriate garnishments of her husband's wages.

Without contradiction by Collection, she testified that she missed several

hours of work at her job to consult with Debtors' attorneys, and to

communicate with Mr. Dickerson's employer about the offensive

garnishments.  In Exh. 144, Ms. Dickerson calculates that she lost wages for

approximately 28 hours, totaling $259.  In addition to the time off work,

Ms. Dickerson testified that these garnishments caused her severe anxiety,

and that the emotional toll from dealing with the garnishments

exacerbated her preexisting medical condition.  Ms. Dickerson also

testified the continuous garnishments caused Debtors significant

MEMORANDUM OF DECISION – 10

embarrassment.

On September 26, 2013, Collection obtained the last writ of garnishment, this time for $752.66, which was served on Mr. Dickerson's employer.  Exh. 137.  This garnishment netted $7.17 from Mr. Dickerson's wages, which, with Collection's later permission, was also returned to Debtors by the Sheriff.  Exh. 140-41.

In December 2013, Debtors engaged new counsel to prevent further garnishments by Collection, and if necessary, to take legal action if a resolution could not be achieved.  Ms. Dickerson testified that Debtors had paid their previous bankruptcy counsel $400 to resolve these issues, and that they paid a $1,500 retainer to new counsel.  In February 2014, Debtors filed the Motion in this Court.[6]

In summary, based on the evidence, it appears that, after Debtors' bankruptcy case was closed, Collection had five garnishment writs served

---

[6] On January 9, 2014, Debtors' attorneys filed an abuse of process and unjust enrichment complaint in state court against Collection based upon its activities in pursuing Debtors to recover debts discharged in their bankruptcy. The Court is unaware of the status or disposition of this action.

MEMORANDUM OF DECISION – 11

by the Sheriff on Mr. Dickerson's employer to satisfy all or part the

judgment debt.  Although issued after entry of the discharge in Debtors'

bankruptcy, the first writ sought recovery of the full amount of the default

judgment, plus interest; the remaining four garnishment writs sought to

seize a reduced amount based on Collection's calculations of the amounts

due for interest, fees, and costs associated with the fines previously owed

to the County.  In pursuing these later writs, Collection had unilaterally

determined that, despite the bankruptcy discharge, and despite the

evidence given to them by Debtors that they had paid all of the fines

directly to the County, it could nonetheless use state court process to

collect the interest and fees attributable to the fines, and the costs of

collection of the judgment, all of which it concluded were debts excepted

from discharge in Debtors' bankruptcy case under § 523(a)(7).

As explained below, the Court concludes that Collection's decision

to aggressively pursue recovery of these amounts, despite the intervention

of Debtors' bankruptcy and discharge, was ill-considered, and it actions

are attended by significant consequences.

MEMORANDUM OF DECISION – 12

### *Analysis and Disposition*

Debtors argue that they directly paid the County for all of the fines

that were assigned to Collection.  Even if some amounts remained due on

the fines, Debtors argue that they never owed the amounts Collection

sought to recover under the garnishments.  Instead, Debtors contend, all

the amounts Collection sought to recover from Debtors were attributable to

interest, fees, and collection costs, all of which were discharged in their

bankruptcy case.  As a result, Debtors contend that Collection violated the

§ 524(a) discharge injunction each time it obtained, and had the Sheriff

serve, a writ of garnishment on Mr. Dickerson's wages.[7]

Collection, of course, does not dispute that it sought and obtained

writs of garnishment on Mr. Dickerson's wages post-discharge.  Further,

Collection does not dispute that its first writ of garnishment, served in

November 2011, which sought to collect the full amount of the default

judgment plus interest, was a clear violation of the discharge injunction.

---

[7] At the evidentiary hearing, and based upon the timing of Collection's
actions, Debtors withdrew the argument in the Motion that Collection also
violated the § 362(a) automatic stay.

MEMORANDUM OF DECISION – 13

However, Collection claims, Debtors incurred no compensable damages as a result of this discharge violation because Collection released the writ soon after it was served.

As to the remaining four writs obtained and served post-discharge, Collection does not dispute that Debtors paid all of the amounts due on the fines directly to the County.  Even so, Collection argues that, under Idaho Code § 19-4708, it was entitled to recover an additional "surcharge" that was added to the original fines imposed by the County because they were also excepted from discharge in bankruptcy pursuant to § 523(a)(7).  Thus, Collection asserts, its repeated attempts to garnish Mr. Dickerson's wages were justified, and did not violate the discharge injunction.

*Analysis and Disposition*

**I.  Applicable Law**

A.  The Discharge and an Exception

Debtors file bankruptcy cases to stop collection activities by their creditors, and to obtain debt relief.  The § 362(a) automatic stay, which arises when a bankruptcy case is commenced, stops creditors, and the

MEMORANDUM OF DECISION – 14

Code's discharge provision gives debtors their "fresh start." *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

Section 524 describes the "[e]ffect of discharge" in a bankruptcy case; its provisions of import in this case specify that:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

The scope of the discharge in bankruptcy case differs depending upon the chapter under which a debtor seeks relief.  Debtors here sought relief under chapter 7, and § 727 describes the contours of a discharge under that chapter:  "[e]xcept as provided in section 523 of this title, a discharge under [§ 727(a)] discharges the debtor from all debts that arose

MEMORANDUM OF DECISION – 15

before the date of the order for relief under this chapter . . . ."  § 727(b).

Simply put, then, a chapter 7 discharge will prohibit the collection of all of

a debtor's pre-bankruptcy debts, except those debts expressly excepted

from discharge under § 523(a).

In this case, Collection argues it acted properly because there is an

exception to discharge that applies to the debts it sought to collect from

Debtors.  It relies on § 523(a)(7), which provides:

> (a) A discharge under section 727 . . . of this title does not
> discharge an individual debtor from any debt— . . . (7) to
> the extent such debt is for a fine, penalty, or forfeiture
> payable to and for the benefit of a governmental unit, and
> is not compensation for actual pecuniary loss . . . .

As used in § 523(a)(7), the Code elsewhere provides that "[t]he term

'governmental unit' means United States; State; Commonwealth; District;

Territory; municipality; foreign state; department, agency, or

instrumentality of the United States . . ., a State, a Commonwealth, a

District, a Territory, a municipality, or a foreign state; or other foreign or

domestic government."  § 101(27).

According to § 524(a), the discharge in Debtors' bankruptcy case

MEMORANDUM OF DECISION – 16

enjoined their creditors from any attempt to collect prebankruptcy debts, and voided any prebankruptcy judgment for such debts. Under § 727(a), whether Collection violated the discharge in this case depends upon whether Collection was pursuing recovery of debts that, for purposes of § 523(a)(7), were "fine[s] . . . payable to and for the benefit of a governmental unit, and . . . not compensation for actual pecuniary loss . . . ."

B.  Discharge Injunction Violations

What are the implications of a creditor's violation of the discharge injunction?  The answer to this question requires the interpretation and application of several Code provisions, and any analysis of the Bankruptcy Code begins with the text of the statute. *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 723-24 (2011); *Danielson v. Flores (In re Flores)*, 735 F.3d 855, 859 (9th Cir. 2013) (en banc) (citing *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2011), *cert. denied*, 133 S. Ct. 256 (2012)); *see also Huntley v. Vessey (In re Vessey)*, 03.1 IBCR 62, 64 (Bankr. D. Idaho 2003); *Fry v. Hough (In re Hough)*, 98.4 IBCR 132, 133 (Bankr. D. Idaho 1998).  "Furthermore, 'the words of [the Code] must be read in their context and with a view to their

MEMORANDUM OF DECISION – 17

place in the overall statutory scheme.'" *In re Flores*, 735 F.3d at 859

(quoting *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1244 (9th Cir.

2012)). "If the statutory language is unambiguous and the statutory

scheme is coherent and consistent, judicial inquiry must cease." *Fireman's*

*Fund Ins. Co. v. Plant Insulation Co. (In re Plant Insulation Co.)*, 734 F.3d 900,

910 (9th Cir. 2013) (citations and internal quotation marks omitted).

 The bankruptcy discharge is no toothless tiger. "A party who

knowingly violates the discharge injunction [of § 524(a)(2)] can be held in

contempt under [§] 105(a) of the [B]ankruptcy [C]ode." *Zilog, Inc. v.*

*Corning (In re Zilog)*, 450 F.3d 996, 1007 (9th Cir. 2006) (citing *Renwick v.*

*Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls v. Wells*

*Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002)). Put another way, a

"willful" violation of the discharge injunction can be the basis for a finding

of civil contempt, and the imposition of appropriate sanctions, under

§ 105(a). *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir.

2003).

 "To prove that a sanctionable violation of the discharge injunction

MEMORANDUM OF DECISION – 18

has occurred, the debtor must show that the creditor: '(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction.'" *Nash v. Clark Cnty. Dist. Attorney's Office (In re Nash)*, 464 B.R. 874, 880 (9th Cir. BAP 2012) (quoting *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008)). To establish contempt, the debtor must show that the target creditor was aware of the discharge injunction and its applicability to its claim. *In re Nash*, 464 B.R. at 880 (citing *In re Zilog*, 450 F.3d at 1007-09). However, in applying this standard, "the focus 'is not on the subjective beliefs or intent of the [creditor] in complying with the order, but whether in fact [its] conduct complied with the order at issue.'" *In re Dyer*, 322 F.3d at 1191 (quoting *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996)).

Clear and convincing evidence must be presented to show that a creditor has violated the discharge injunction, and that sanctions are justified. *In re Zilog*, 450 F.3d at 1007 (citing *In re Bennett*, 298 F.3d at 1059); *see also In re Nash*, 464 B.R. 874, 880 (9th Cir. BAP 2012). Upon such a showing, the burden then shifts to the creditor to demonstrate why it was

MEMORANDUM OF DECISION – 19

not able to comply with the discharge order.  *In re Bennett*, 298 F.3d at 1069.

If a knowing, willful violation of the discharge injunction is established, a bankruptcy court may award the debtor the actual damages suffered as a result of that conduct, together with any attorney fees and costs the debtor incurred to remedy the violation.  *In re Nash*, 464 B.R. at 880 (quoting *Espinosa*, 553 F.3d at 1205 n.7).  However, in general, "punitive damages are not an appropriate remedy for § 105(a) contempt proceedings, [but] 'relatively mild' noncompensatory fines may be acceptable in some circumstances."  *In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 IBCR 110, 113 (Bankr. D. Idaho 2010) (quoting *In re Dyer*, 344 F.3d at 1193-94).  Such "relatively mild" fines must be narrowly tailored "to the amount necessary for rule enforcement."  *Id.* (citing *Zambrano v. City of Tustin*, 885 F.2d 1473, 1479-80 (9th Cir. 1989)); *see also In re Dyer*, 322 F.3d at 1193-94 (reciting this standard, but leaving the question of what constitutes "serious" punitive sanctions for another day).

## II.  Application of Law to Facts

### A.  Collection Violated the Discharge Injunction

MEMORANDUM OF DECISION – 20

As explained above, the Court begins its review of the issues by reference to the text of the relevant Bankruptcy Code provisions, reading them in context with one another, with an eye to implementation of the essential themes of the Code.  If the language of the Code provisions is clear, the Court need not inquire further about the statute's meaning.

Here, Debtors received a chapter 7 discharge on October 17, 2011. That discharge voided any prebankruptcy judgments their creditors held, and enjoined those creditors from acting to collect any prebankruptcy debts from them unless the debt was excepted from discharge under § 523(a).  *See* §§ 524(a)(1), (2); 727(b).

Of course, there is no dispute that Collection's actions in pursuing the first writ of garnishment, seeking to collect the entire balance due on the judgment plus interest, the bulk of which represented debts that Collections concedes were discharged, violated the discharge injunction. Indeed, as provided in § 524(a)(1), the judgment Collection relied upon was void as to the discharged debts, and obtaining and instructing the

MEMORANDUM OF DECISION – 21

Sheriff to serve that writ were acts that violated the § 524(a)(2) injunction.

Of course, Collection attempts to justify its actions by claiming that the writ

amount was an oversight, and that it acted promptly to release it.  Still,

even if this is true, there can be no doubt that Collection was aware of the

discharge, and knowingly acted to collect discharged debts.

Of course, Collection has a different explanation for its attempts to

collect from Debtors via the four subsequent writs for the "reduced"

amounts.  Collection argues that the debts represented by those writs were

all excepted from discharge under § 523(a)(7), because, according to

Collection, those debts were each for "a fine, penalty, or forfeiture payable

to and for the benefit of a governmental unit, and [ ] not compensation for

actual pecuniary loss . . . ."  If Collection is correct, it did not violate the

discharge injunction with the last four writs of garnishment, but under

these facts, that is a big "if."

Given the remedial purposes of the Code, the Court is constrained to

interpret discharge exceptions under § 523(a) to those plainly expressed.

*See Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1760-61 (2013)

MEMORANDUM OF DECISION – 22

(construing § 523(a)(4) narrowly because such a reading "is consistent with

the long-standing principle that exceptions to discharge should be confined

to those plainly expressed.  It is also consistent with a set of statutory

exceptions that Congress normally confines to circumstances where strong,

special policy considerations, such as the presence of fault, argue for

preserving the debt, thereby benefitting, for example, a more honest

creditor.  *See, e.g.,* . . . § 523(a)(7).") (internal quotation marks and citations

omitted); *see also Sachan v. Huh (In re Huh)*, ___ B.R. ___, 2014 WL 956803, at

*5 (9th Cir. BAP Mar. 11, 2014) (en banc) (explaining that "the exception to

discharge provisions of the Bankruptcy Code are interpreted strictly in

favor of debtors.") (citing *Bugna v. McArther (In re Bugna)*, 33 F.3d 1054,

1059 (9th Cir. 1994)).

More particularly, as explained by the Supreme Court, while the

plain language of § 523(a)(7) "creates a broad exception for all penal

sanctions, whether they denominated fines, penalties, or forfeitures . . .

Congress included two qualifying phrases; the fines must be both

'[payable] to and for the benefit of a governmental unit,' and 'not

MEMORANDUM OF DECISION – 23

compensation for actual pecuniary loss.'" *Kelly v. Robinson*, 479 U.S. 36, 51 (1986).

As to the first qualifier, as a leading bankruptcy treatise notes, the Code defines "governmental unit" in § 101(27) "broadly to include domestic and foreign governments at all levels and their constituent units. It does not, however, include 'entities that operate through State action, such as through a grant of a charter or a license, and have no further connection with that State or Federal government.' The department, agency[,] or instrumentality in question should actually be carrying out governmental rather than private objectives." 2 COLLIER ON BANKRUPTCY ¶ 101.27 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 311 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 24 (1978); *Revere Copper Prods., Inc. v. Hudson River Sloop Clearwater, Inc. (In re Revere Copper & Brass, Inc.)*, 29 B.R. 584, 587 (Bankr. S.D.N.Y. 1983), *aff'd*, 32 B.R. 725 (S.D.N.Y. 1983)). Despite this broad definition, though, Collection obviously is not a governmental unit.

Recall, Collection was the only plaintiff named in the Complaint it

MEMORANDUM OF DECISION – 24

filed against Debtors, and in paragraph 3, that complaint explains that

Collection's standing to collect from Debtors based on its status as the

contractual assignee of the various creditors holding the claims against

Debtors thereafter described.  *See* Exh. 104.  Importantly, then, under the

terms of its own complaint, as assignee, Collection was not seeking to

recover the debts from Debtors on the County's behalf, but rather, it was

asserting its own legal right to collect from them.  Consistent with this

position, the state court awarded a default judgment on all counts (and a

couple of extras) to Collection, not to or for the benefit of the assignor

creditors.  Clearly, then, as an assignee and the named judgment creditor,

the debts created by the judgment on account of any fines and fees are

"payable to" Collection, not to the County.  *See* Exh. 107 at 2.  Therefore,

the state court judgment did not represents debts "payable to a

governmental unit" for purposes of § 523(a)(7).

   The Court also concludes that the debts were not "for the benefit of a

governmental unit," another reason why § 523(a)(7) will not protect

Collection.  Again, without dispute, the evidence submitted at the hearing

MEMORANDUM OF DECISION – 25

established that Debtors had paid all but $150 of the fines Mr. Dickerson

owed to the County well before Collection even instituted the state court

action against Debtors.  Presumably, then, in those counts of the Complaint

based upon paid fines, the amounts Collection sought to collect in state

court were for its own benefit, not that of a "governmental unit."  Any

additional amounts Collection was pursuing for interest, fees, or collection

costs were not "for the benefit of a governmental unit."  *See In re Towers*,

162 F.3d 952, 954-56 (7th Cir. 1998), *cert. denied*, 527 U.S. 1004 (1999)

(holding that a restitution order payable to a state attorney general but for

the benefit of the criminal defendant's victims was dischargeable under

§ 523(a)(7)); *Kish v. Farmer (In re Kish)*, 238 B.R. 271, 286 (Bankr. D. N.J.

1999) (holding that surcharges added to motor vehicle fines were not "for

the benefit of a governmental unit").

　　　　But even if Collection could establish that these debts were "payable

to and for the benefit of" the County, there is another problem with its

legal position evident in this record.  Because Debtors paid the fines to the

County, any additional amounts Mr. Dickerson arguably owed to

MEMORANDUM OF DECISION – 26

Collection for interest or fees would constitute "compensation [to Collection or the County] for actual pecuniary loss."  This is another, distinct reason that those debts do not qualify for an exception to discharge under § 523(a)(7) as noted in *Kelly*.

Neither the parties nor the Court could locate binding case law concerning whether a debt that would qualify for an exception to discharge under § 523(a)(7) retains this status upon an assignment to a non-governmental unit; although *Stevens v. Comm. Collection Servs., Inc. (In re Stevens)*, 184 B.R. 584 (Bankr. W.D. Wash. 1995) is squarely on point.  In that case, the assignee creditor garnished the wages of the debtor post-discharge attempting to collect traffic fines owed to a county district court.  The debtor prosecuted an adversary proceeding against the creditor arguing that the creditor was in contempt for violation of the discharge injunction.  The bankruptcy court first determined that traffic fines were excepted from discharge under § 523(a)(7). *Id.* at 586.  The court noted that, as argued by the debtor, the debts the creditor sought to collect were not "payable to a governmental unit," but rather, were payable to the creditor,

MEMORANDUM OF DECISION – 27

a private company. *Id.* Even so, the court declined to endorse debtor's

argument that the creditor was guilty of contempt explaining that:

> The "assignment" from the County to the [creditor] was
> not a transfer of ownership of the claim. Rather, pursuant
> to its contract with the County, the [creditor] is the
> County's agent for purposes of collection, and the County
> receives 100% of sums the defendant collects. Where there
> has been an assignment for collection purposes, the
> assignor remains the real party in interest. The debtor
> would have the [c]ourt conclude that a debt payable to an
> agent for the benefit of its principal is no longer payable to
> the principle and is hence dischargeable. This
> interpretation is contrary to general agency principles and
> creates no legally meaningful distinction for purposes of
> § 523(a)(7).

*Id.*

The Court respectfully disagrees with the bankruptcy court's

conclusion in *Stevens*. It cited no authority for its conclusion that a

collection company pursuing recovery of nondischargeable fines may also

take advantage of the § 523(a)(7) exception to discharge. The court also did

not address the language in the § 101(27) definition of "governmental

unit," which does not include an assignee, or agent, of a governmental

unit.

MEMORANDUM OF DECISION – 28

Beyond this, the Court notes that the facts in *Stevens* are likely distinguishable from the present case.  Although the *Stevens* court did not discuss the contract between the parties in detail, it apparently did review that contract and it found that the assignee-creditor was obliged to turn over "100% of the sums" the creditor collected to the county.  *Id.*  In this case, most of what Collection was attempting to recover from Debtors represented fees and statutory costs associated with the original fines, or in other words, amounts that would be paid to Collection, not to the County.

Finally, in reaching its conclusion, the *Stevens* court reads § 523(a)(7) broadly to include agents and assignees, an inappropriate interpretive approach in this context.  *See Bullock*, 133 S. Ct. at 1760-61; *In re Huh*, 2014 WL 956803, at *5.  The Court therefore declines to follow the reasoning of *In re Stevens* here.

Because the debts at issue in this case were not excepted from discharge under § 523(a)(7), Collection's default judgment was voided, and it was thereby enjoined from collecting any prebankruptcy debts from Debtors.

MEMORANDUM OF DECISION – 29

Collection also relies on an Idaho statute to support its argument

that the debts are excepted from discharge.  However, that statute, Idaho

Code § 19-4708, does not compel that result.  It provides:

> Collection of Debts Owed to Courts – Contracts for
> Collection
>
> (1) The supreme court, or the clerks of the district court
> with the approval of the administrative district judge, may
> enter into contracts in accordance with this section for
> collection services for debts owed to courts. The cost of
> collection shall be paid by the defendant as an
> administrative surcharge when the defendant fails to pay
> any amount ordered by the court and the court utilizes the
> services of a contracting agent pursuant to this section
> . . .
>
> (2) As used in this section: . . .
>
> (c) "Debts owed to courts" means any assessment of fines,
> court costs, surcharges, penalties, fees, restitution, moneys
> expended in providing counsel . . . or other charges which
> a court judgment has ordered to be paid to the court in
> criminal cases . . . .
>
> (4) Each contract entered into pursuant to this section shall
> specify the scope of work to be performed and provide for
> a fee to be paid or retained by the contracting agent for
> collection services.  Such fee shall be designated as the
> costs of collection, and shall not exceed thirty-three
> percent (33%) of the amount collected.  The cost of

MEMORANDUM OF DECISION – 30

collection shall be deducted from the amount collected but shall not be deducted from the debts owed to courts.

(5) Contracts entered into shall provide for the payment of any amounts collected to the clerk of the district court for the court in which the debt being collected originated after first deducting the collection fee . . . .

Idaho Code § 19-4708.

Collection argues that this statutes shows the "surcharges" it added to the amounts of the fines for collection costs were proper per state law. However, Collection did not submit in evidence its contract with the County for collection of these debts, so the Court is left to wonder whether its deal with the County comported with the statute. Moreover, though the statute adds "surcharges" and other costs to the amount an offender is required to pay to satisfy the debt, and requires the offender to pay the fines to the district court clerk, the statute does not deputize a county's debt collectors as a "governmental unit," as defined by the Bankruptcy Code. Even if the statute attempted to accomplish this, it would likely not be sufficient under § 101(27). The statute also makes clear that the collection costs will be deducted by the collector, not paid to the county,

MEMORANDUM OF DECISION – 31

and so these amounts are not "payable to and for the benefit of" the

county, either.  And finally, unlike the underlying fines, the statute makes

clear that the surcharges are designed to pay for the county's "collection

services," and thus, they represent compensation to a county for an actual

"pecuniary loss."

The Court's conclusion that these costs and fees are not excepted

from discharge under § 523(a)(7) is in accord with the decision of the Ninth

Circuit Bankruptcy Appellate Panel in *Searcy v. Ada Cnty. Prosecuting*

*Attorney's Office (In re Searcy)*, 463 B.R. 888 (9th Cir. BAP 2012).  There, the

Panel affirmed the bankruptcy court's determination that attorney fees and

costs a criminal defendant debtor was ordered to pay by a state court were

excepted from discharge under § 523(a)(7).  The Panel looked to Idaho state

law to determine if the attorney fees and costs the state court ordered the

debtor to pay were in the nature of a "fine, penalty or forfeiture," but noted

that the determination of whether a debt under § 523(a)(7) is excepted from

discharge is a question of federal law.  *Id.* at 892.  The Panel was forced to

look to state law to determine whether the attorney fees and costs at issue

MEMORANDUM OF DECISION – 32

were a "fine, penalty or forfeiture" because those are not defined terms in

the Bankruptcy Code.  However, "governmental unit" is defined by the

Bankruptcy Code, and this Court is bound to follow this federal law in

resolving the issue.

In conclusion, based upon the plain language of the applicable

Bankruptcy Code provisions, all of the debts Debtors owed to Collection,

with the exception of the $150 fine balance Debtors paid to the County in

May of 2012, were discharged in their bankruptcy case.  Because the

discharge exception was inapplicable to most of the amounts Collection

was attempting to collect from Debtors, the Court will now address

whether Debtors have shown that Collection should be held in contempt

for its violations of the § 524(a) discharge injunction.

B. Collection's Actions Constituted Contempt

As explained below, the Court concludes that Debtors have proven

by the requisite clear and convincing evidence that Collection knowingly

and willfully violated the discharge injunction.  It did so because (1)

Collection knew the discharge injunction was applicable to its claims; and

MEMORANDUM OF DECISION – 33

(2) while it erroneously assumed its claims against Debtors were not

discharged, Collection no doubt intended the actions it took that violated

the discharge injunction.  Debtors have further shown that sanctions are

appropriate under these facts, and Collection has failed to demonstrate

why it was unable to comply with the Court's order.

> 1. *Collection Knew the Discharge Injunction Applied
> to its Claims Against Debtors.*

In order for a creditor to be held in contempt for its violation of the

discharge injunction, a debtor must show by clear and convincing evidence

that the creditor was aware of the discharge injunction, and was aware that

the injunction applied to its claims.  *In re Zilog, Inc.*, 450 F.3d at 1009 n.14;

*In re Nash*, 464 B.R. at 880.  However, the creditor's "subjective beliefs" or

"intent" in complying with the discharge injunction is not dispositive to

the inquiry of whether its actions violated the injunction.  *In re Dyer*, 332

F.3d at 1191.  In other words, a creditor may not hide its eyes to the

discharge injunction to avoid its reach.

The Ninth Circuit Bankruptcy Appellate Panel addressed facts

MEMORANDUM OF DECISION – 34

similar to this case in a recent unpublished decision, which this Court

considers persuasive.  *Chionis v. Starkus (In re Chionis)*, BAP No. CC-12-

1501-KuBaPa, 2013 WL 6840485, at *1 (9th Cir. BAP Dec. 27, 2013) (stating

the decision "may be cited for whatever persuasive value it may have").  In

that case, the Panel reversed a bankruptcy court's determination that a

creditor's subjective knowledge about the extent of the discharge

injunction prevented the court from determining that the creditor was in

contempt for violation of the discharge injunction.

  In *Chionis*, the creditor was listed in the debtor's schedules, and after

entry of a § 727 discharge, acting *pro se,* the creditor sued the debtor in state

court to collect a loan made to the debtor before the bankruptcy case was

filed.  The creditor purportedly filed the suit despite the discharge because

he believed the loan agreement in question, signed by the debtor,

contained an effective "no discharge" provision.  Upon learning of the suit,

the debtor's bankruptcy counsel sent the creditor a letter explaining that

contract provisions attempting to skirt the bankruptcy discharge were

ineffective under the Code, and warning the creditor that it would be a

MEMORANDUM OF DECISION – 35

violation of the discharge injunction to proceed with the state court action.

When the creditor declined to discontinue the action, the debtor filed an

adversary proceeding against the creditor, asking the bankruptcy court to

hold the creditor in contempt for violation of the discharge injunction.  The

bankruptcy court, based upon the Ninth Circuit's decision in *In re Zilog,*

*Inc.*, decided that, while the creditor obviously knew about the existence of

the discharge in debtor's bankruptcy case, because the creditor subjectively

believed (albeit incorrectly) that the "no discharge" provision excepted the

debt from discharge in bankruptcy, the creditor could not be found in

contempt.  *Id.* at *3.

The Panel reversed the bankruptcy court's decision.  While

acknowledging that  *In re Zilog, Inc.*

> is broad and arguably could be interpreted as precluding
> a finding of willfulness and hence precluding the
> imposition of contempt sanctions whenever the alleged
> contemnor testifies that, for whatever reason, he or she
> did not subjectively believe that the discharge applied to
> his or her claim, no matter how misguided or
> unreasonable that belief might have been.  However, we
> do not believe that *In re Zilog, Inc.* intended such an
> expansive reading of its comments, given that such a

MEMORANDUM OF DECISION – 36

reading   seemingly   would   render   the   bankruptcy
discharge all but toothless.

*Id*. at *7.

In this case, Collection was listed in Debtors' schedules, received

notice of Debtors' bankruptcy filing, and later, notice of the entry of

Debtors' discharge.  Dkt. No. 1 at 21-22; Exh. 109; Dkt. No. 28; Exh. 117.

Collection does not dispute this.  After the discharge was entered,

Collection knowingly undertook a series of garnishments of Mr.

Dickerson's wages, although Debtor, though counsel, repeatedly advised

Collection of their belief, and citing authorities to support that, in doing so,

Collection was violating the discharge order.  *See* Exhs. 114, 117, 122, and

125.  Collection's response to Debtors' admonishments advised that, in its

view, any amounts attributable to the County fines were excepted from

discharge per § 523(a)(7).  Debtors again warned Collection that its

collection efforts would constitute discharge violations because the

amounts Collection sought were not fines, but were instead the collection

costs and fees added to the fines.  Exh. 122.  Collection, a professional debt

MEMORANDUM OF DECISION – 37

collector, ignored Debtors' objections and continued its attempt to collect from Mr. Dickerson's wages, apparently undertaking a calculated risk that Debtors' view of the law was correct.

Collection lost this bet. As the Court explained above, the debts Collection sought to collect were not excepted from discharge. Because of this, under § 524(a), Collection was enjoined from seeking to collect those debts from Debtors, and its state court judgment against Debtors was void. On this record, the Court concludes that Debtors have shown, through clear and convincing evidence, that Collection was aware of the discharge injunction and that Collection knew it applied to its claims against Debtors. Collection's subjective, but incorrect, belief that the debts it was assigned from the County were excepted from discharge does not save it from this conclusion.

      2. *Collection Intended the Actions which Violated the Discharge Injunction.*

The Court also concludes that Debtors have shown through clear and convincing evidence that Collection intended the actions it took which

MEMORANDUM OF DECISION – 38

violated the discharge injunction, thus satisfying the second prong of the

test set forth in *In re Zilog, Inc.* and *In re Nash.*

   After receiving notice of the entry of the discharge order, over the

course of many months, Collection caused five writs of garnishment to be

served on Mr. Dickerson's employer.  The first writ was for the full amount

of the default judgment plus interest.  This action was a clear violation of

the discharge injunction, which Collection does not dispute.  Then, after

being advised of the breadth of the discharge injunction by Debtors,

Collection caused four more writs of garnishment to be issued and served

on Mr. Dickerson's employer.  After these writs were served, Debtors

advised Collection that its action was a violation of the discharge

injunction.  Each of these acts to collect the discharged debts were,

therefore, knowing, willful, and intentional violations of the discharge

injunction.

   Given these facts, the Court concludes that Collection should be held

in contempt for repeatedly violating the discharge injunction in this case.

MEMORANDUM OF DECISION – 39

*3.   Debtors Suffered Compensable Damages on Account of Collection's Actions.*

While the Court concludes that Collection knowingly violated the discharge order, as noted at the conclusion of the evidentiary hearing, under these facts, the Court is not persuaded it should impose any punitive sanctions against Collection.  Though it violated the discharge, Collection's efforts were founded upon a misunderstanding of the bankruptcy law, compounded by flawed advice it received from counsel. Moreover, while the repeated garnishments caused Debtors considerable financial stress and inconvenience, Collections did not actually receive any significant funds from Debtors via its activities.  Further, although the Court heard testimony from Mrs. Dickerson as to her anxiety, embarrassment, and an exacerbation of a preexisting medical condition this situation allegedly caused her, the Court did not receive any further evidence of these damages, and therefore, it will not impose punitive damages on account of these alleged injuries.[8]

---

[8]  Collection should be aware, though, that it is chargeable with the knowledge that its attempts to collect under these facts were gravely

MEMORANDUM OF DECISION – 40

That said, however, as the Ninth Circuit instructs, "[i]f the bankruptcy court finds that the creditor [] willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make [the debtor] whole." *Espinosa*, 553 F.3d at 1205 n.7.  To that end, pursuant to § 105(a), the Court finds that Collection should be ordered to compensate Debtors for the following amounts as damages, all incurred as a direct result of Collection's discharge violations:  $400, the amount Debtors paid their former bankruptcy counsel to attempt, unsuccessfully as it turned out, to rectify Collection's discharge injunction violations; and $259 for the wages lost by Mrs. Dickerson to meet with counsel to discuss and plan a response to Collection's actions.

In addition, Debtors are entitled to recover reasonable attorneys fees and costs incurred in prosecuting this motion.  Based upon the

---

inappropriate.  Were it to repeat its offense in other cases, that would be strong evidence that punitive sanctions should be imposed.  If Collection is in doubt as to the status of any debts it hopes to collect after discharge, it need not guess or gamble, but instead may commence an adversary proceeding in this Court to obtain a formal determination of dischargeability as to those debts.  *See* Rules 4007, 7001(6).

MEMORANDUM OF DECISION – 41

submissions of the parties, the Court determines this amount to be a total

of $8,500.00.[9]

### Conclusion

For these reasons, Debtors' motion for an order finding Collection in

---

[9] On March 28, 2014, Debtors filed a Motion and Memorandum for Attorneys Fees and Costs, together with their attorney's supporting affidavit, detailing the services provided to Debtors and the amount charged for this representation, Dkt. Nos. 51, 52. Collection has objected to this Motion, Dkt. Nos. 53 and 55, and Debtors have filed a response to the objection, Dkt. No. 54. Because these submissions adequately set forth the positions of the parties, no further hearing is required, and by this Memorandum, the Court has determined the appropriate amount to be included for Debtors' attorneys fees and costs as part of the compensatory damages for Collection's contempt in violating the discharge injunction. *See Walls v. Wells Fargo Bank, N.A.,* 276 F.3d at 507 (noting that the compensatory civil contempt damages that may be recovered by an aggrieved debtor for a creditor's discharge violation includes attorneys fees); *In re Nash,* 464 B.R. at 880 (same).

Moreover, the parties' suggestion that Debtors' right to recover, and the amount of any attorneys fees and costs that should be awarded, is somehow governed by the Idaho Rules of Civil Procedure is misplaced.

Finally, Collection's objections to the amount requested for Debtors' attorneys fees and costs based upon the limitations placed on recoveries for automatic stay violations under § 362(k) by the Ninth Circuit in *Sternberg v. Johnson,* 595 F.3d 937 (9th Cir. 2009) are overruled; those limitations do not apply to damage awards made under § 105(a) for a creditor's contemptuous violation of the discharge injunction. *Rediger Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.),* 503 B.R. 726, 734 (9th Cir. BAP 2013) (citing *Sternberg,* 595 F.3d at 946 n.3). Collection's objections to the amounts requested for Debtors' attorneys fees have been addressed by the Court's decision to award less than the total they requested.

MEMORANDUM OF DECISION – 42

contempt for its actions violating the discharge injunction in this case will

be granted by separate order.  That order will also require that Collection

pay compensatory damages to Debtors as discussed above.

Dated:  May 1, 2014

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 43